IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SANDRA MUMPHREY,

    Plaintiff,

      v.

FULTON COUNTY
GOVERNMENT, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-2762-TWT

ORDER

This is an employment discrimination case. It is before the Court on the

Defendants Fulton County and Myron Freeman's Motion for Summary Judgment

[Doc. 32]. For reasons stated below, the motion is granted.

I. Background

Since 1991, Sandra Mumphrey has worked in the Fulton County Sheriff's

Office as a Deputy III Field Training Officer. In 2003, her psychiatrist diagnosed

Mumphrey with major depression and panic disorder which caused mood swings and

uncontrollable crying. She has panic attacks once or twice a week. At her request, the

Sheriff granted her intermittent leave under the Family and Medical Leave Act. No

request for leave has ever been denied. Since June 2006 she works a job assignment

with days off and hours that she bid upon and received due to her seniority.  In spite of her mental illness, she contends that she has excellent job performance evaluations. She contends that a supervisor created a hostile working environment by saying that deputies who took FMLA leave were lazy.  This embarrassed her and hurt her feelings.  Also for a month in 2006, she was not able to get Saturday and Sunday off which interfered with her ability to work a second job on Saturday.  The facts are set forth in greater detail below.

When the Plaintiff's mental illness was diagnosed in 2003, she worked as a training officer at the Fulton County jail.  Thereafter, she requested and received intermittent FMLA leave.  She alleges that on March 1, 2006, Captain William Beavers met with Mumphrey to discuss her absences.  Mumphrey contends that Beavers threatened to change her off days, which were then Saturdays and Sundays, unless she reduced her absenteeism.  Before the March 1, 2006 meeting, the Sheriff's Department had authorized Mumphrey to work a second job on Saturdays and Sundays.  In Mumphrey's eyes, the threat to change her off days was a threat to her ability to work a second job.

On March 15, 2006, Beavers requested Mumphrey's attendance at a meeting that included other deputies and detention officers.  During the meeting, Beavers allegedly criticized the FMLA, and described people that took medical leave as lazy.

On March 18, 2006, Mumphrey sought psychiatric treatment due to the "stressful work environment created by Beavers." (Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 6.)  On March 27, 2006, Beavers met with Mumphrey again.  Mumphrey claims that Beavers "laughed at" and "mocked" her during the meeting, because of how upset she got during the March 15 meeting.  Mumphrey contends that Beavers continued to "harass" her over FMLA leave over the course of the next month.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 6.)  In April of 2006, Beavers took several days of leave "because of the hostile work environment caused by Beavers." (Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 6.)  On May 8, 2006, Mumphrey sought additional psychiatric treatment.  On May 18, 2006, Beavers changed Mumphrey's off days to Sundays and Mondays (effective May 28, 2006).  This shift made it impossible for Mumphrey to work her second job.  As a result, she lost income.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 7.)  This shift was also the first change in Mumphrey's off days since 1991.

On May 22, 2006, Mumphrey filed a grievance with Major J. Hull on the grounds that Beavers harassed her for taking FMLA leave.  Mumphrey wanted to be removed from Beavers's supervision.  She also asked to be reassigned to Grady Hospital so that she could have Saturdays and Sundays off.  She submitted written statements from two coworkers that confirm that Beavers made disparaging remarks

about the FMLA.  One statement indicated that Beavers thought the FMLA was a "big

joke," and that officers that used it were getting a check for doing nothing.  (Pl.'s

Opp'n to Defs.' Mot. for Summ. J., at 7.) Mumphrey's superior officers denied the

grievance and refused to reassign her. This denial moved the grievance up the chain

of command to Assistant Chief Charles Felton.

On May 31, 2006, Mumphrey sought additional therapy from a counselor.  She

complained of anxiety attacks "caused by the stress at work."  (Pl.'s Opp'n to Defs.'

Mot. for Summ. J., at 8.)  During the sessions, Mumphrey told the counselor that

Beavers harassed her because she took FMLA leave.  On June 9, 2006, Mumphrey

filed a charge of discrimination with the EEOC.  On June 26, 2006, the EEOC notified

the Defendants of Mumphrey's discrimination charge.  On June 28, 2006, Mumphrey

was reassigned from the main jail to Fulton County's Marietta Annex.  She got

Saturdays and Sundays off again.

On August 3, 2006, Mumphrey again requested a Sheriff's Office investigation

of her complaints of harassment.  On August 15, 2006, Mumphrey wrote a statement

to Sheriff Myron Freeman complaining that the Department handled her grievance

improperly.   The complaint noted that she was subjected to a hostile work

environment from May 22, 2006, until June 28, 2006.  On August 23, 2006, Sheriff

Freeman denied the grievance. On the same day, Chief Roland Lane directed

Mumphrey to take 5 days of leave, and to submit a return-to-work clearance from a professional mental health provider by August 31, 2006. Lane warned Mumphrey that unless she returned with the appropriate medical clearance, "she would be separated from her job without prejudice pursuant to PR-800-8."  Mumphrey did as she was told, and used her earned compensation time and accrued leave.  Mumphrey was paid during the five day period.  On August 25, 2006, Mumphrey provided Lane with a medical clearance from her psychiatrist and she returned to work.  On November 13, 2006, she filed this lawsuit against Fulton County and Sheriff Freeman seeking damages under the Americans with Disabilities Act and the Family and Medical Leave Act.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine of material fact

does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

The Americans with Disabilities Act forbids an employer from discriminating

against an employee on the basis of a disability.  42 U.S.C. § 12112(a). To recover

under the ADA, the plaintiff must show that: (1) she was disabled, (2) she was a

qualified employee at the relevant time, and (3) she was discriminated against because

of her disability.  Wood v. Green, 323 F.3d 1309, 1313 (11th Cir. 2003) (citing Lucas

v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)).  The Defendants argue

that Mumphrey was not disabled within the meaning of the ADA.  "The term

'disability' means, with respect to an individual - - A) a physical or mental impairment

that substantially limits one or more of the major life activities of such individual; B)

a record of such an impairment; or C) being regarded as having such an impairment."

42 U.S.C. § 12102(2).  The Defendants argue that Mumphrey's depression and panic

attacks do not substantially limit a major life activity.

The Plaintiff is not disabled within the meaning of the ADA.  She has not

shown that her mental condition "substantially limits" a major life activity.

Mumphrey's claim is that her mental impairment substantially limits her ability to

work.  There are several problems with this claim.  The Complaint only alleges that

Mumphrey experiences "difficulty" working because of her depression.  Neither the Response to the Motion for Summary Judgment nor the Complaint makes any effort to quantify whether this difficulty exceeds the ADA's threshold of substantiality.  In fact, the Response only indicates that the condition "affects her ability to work at times."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 14.)  It does not say how much.  The Plaintiff's arguments concerning her job performance are inherently contradictory.  On the one hand, she contends that she performs her work superbly.  Indeed, she cites the fact that she received "an outstanding on her last annual performance evaluation."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 4.)  On the other hand, she claims that she cannot work because of her impairment.  She cannot have it both ways.

Presumably, the Plaintiff's claim is that her mental condition substantially limits her capacity to work, but only if she is unable to take advantage of medical leave.  See Pl.'s Opp'n to Defs.' Mot. for Summ. J., at 4 ("Moreover, Mumphrey has successfully performed her job duties *while taking intermittent FMLA leave.*") (emphasis added).  In determining whether a major life activity is substantially limited, courts may not evaluate the individual in a "hypothetical uncorrected state." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999) ("Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a

physical or mental impairment, the effects of those measures - both positive and negative - must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."). "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Id. Therefore, in determining whether Mumphrey's condition substantially limits her capacity, it is impermissible to imagine what the effect on her work would be if she were denied medical leave. To be sure, Mumphrey has alleged that she was retaliated against for asserting her rights. But she has not alleged that Fulton County prevented her from taking any medical leave whatsoever.

The Plaintiff also asserts an ADA retaliation claim. The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. §12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) causation between the protected activity and the adverse action. Standard v. A.B.E.L. Serv., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998).

Based on the Response, I cannot say that the Plaintiff has presented evidence to create a triable issue of material fact on the question of whether she engaged in statutorily protected activity.  First, the Plaintiff is not disabled under the ADA. Therefore, her requests for medical leave do not constitute protected activity under the ADA.  Until she filed her charge letter with the EEOC, the Plaintiff never raised the fact that she might have a disability.  Indeed, she never filed a claim with the Fulton County Office of Disability Affairs.  Although Eleventh Circuit case law provides that a plaintiff engages in statutorily protected activity if she has "a good faith, objectively reasonable belief" that she was entitled to accommodations under the ADA, the Plaintiff does not contend that she had such a belief prior to the time that she filed the charge letter with the EEOC.  The Plaintiff concedes that she never used the word "disability" or "ADA" in any past grievance.  She does contend that her grievances were based on Beavers's harassing behavior and her medical condition, but she never contends that she had a good faith belief that she was disabled prior to the time that she filed a charge letter with the EEOC.

This means that the only relevant "adverse employment action" can be the ones taken after she filed an EEOC charge in June 2006.  The only "adverse" employment action cited is Lane's requirement that Mumphrey take 5 days off and provide a medical clearance of her ability to work.  This is not an "adverse employment action."

This action cost her nothing in wages, although it required her to use compensation time.  Furthermore, it was a legitimate effort by the Sheriff's Department to make sure that Mumphrey was mentally competent to do her job.  At this point, Mumphrey claimed that her mental conditions were so severe that it constituted a disability.  This claim was sufficient for the Sheriff's Department to require that she receive medical clearance before she could work at the jail.  In any event, Mumphrey obtained the relevant clearance and she was never terminated.  She did not suffer an adverse employment action for her filing of the EEOC charge of disability discrimination. The Defendants are entitled to summary judgment on the Plaintiff's ADA claims.

The Plaintiff also argues that the Defendants violated her rights under the Family and Medical Leave Act.  The FMLA affords eligible employees the right to 12 weeks of unpaid medical leave from work during any twelve month period if they have a serious health condition. Drago v. Jenne, 453 F.3d 1301, 1305-06 (11th Cir. 2006) (quoting Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001)).

The Plaintiff's claim that the Defendants interfered with her FMLA rights can be quickly denied.  To state an FMLA interference claim, a plaintiff must demonstrate that she was entitled to a benefit under the FMLA that she was denied.  Strickland, 239 F.3d at 1207.  Here, there is no evidence that the Defendants ever  denied

Mumphrey FMLA leave.  In fact, the Defendants concede that Mumphrey has a serious medical condition within the meaning of the FMLA.  Therefore, the Defendants are entitled to summary judgment on the claim for interference.

The Defendants also argue that the Plaintiff's FMLA retaliation claim should be dismissed.  To state a retaliation claim under the FMLA, an employee must allege that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment decision, and (3) causation between the decision and the activity.  Walker v. Almeria County Bd. of Educ., 379 F.3d 1249, 1252 (11th Cir. 2004). The Defendants concede that Mumphrey engaged in statutorily protected activity.  But they argue that she did not suffer an adverse employment action.  In the Eleventh Circuit, the action must be "materially adverse from the standpoint of a reasonable employee."  Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 978 n.52 (11th Cir. 2008) (citing Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006)).  But as the Supreme Court has noted, when evaluating the impact of retaliation, "[c]ontext matters."  Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006).  "[T]he significance of any given act of retaliation will often depend upon the particular circumstances."  Id.  In fact, even "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children."  Id.

In this context, the Plaintiff has not shown that isolated remarks by a supervisor about the Plaintiff's absenteeism were sufficient to support a claim for FLMA retaliation.  The remarks did not deter Plaintiff from exercising her FMLA rights and did not deter her from filing complaints against the supervisor.  The remarks were not a materially adverse employment action.

Furthermore, the Plaintiff has not shown that there was a causal connection between the brief change in her shift assignment and her complaints of harassment. In order to demonstrate that the adverse decision was causally connected to the protected conduct, a plaintiff must show "that the protected activity and the adverse action are not completely unrelated."  Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11thCir. 1998). In this case, the Sheriff's Department faced staffing shortages and the Department wanted to make sure they had enough people at work on Saturdays and Sundays.

Finally, all of the claims for individual liability under the FMLA should be dismissed.  See Wascura v. Carver, 169 F.3d 683, 687 (11th Cir. 1999) ("We hold that a public official sued in his or her individual capacity is not an "employer" under the FMLA, and therefore there is no federal subject matter jurisdiction over such a claim.").  Furthermore, the claims against Freeman in his official capacity should be

dismissed since they are, in essence, claims against the government.  See <u>Kentucky</u>

<u>v. Graham</u>, 473 U.S. 159, 166 (1985).

IV.  <u>Conclusion</u>

For the reasons stated above, the Defendants Fulton County and Myron

Freeman's Motion for Summary Judgment [Doc. 32] is GRANTED.

SO ORDERED, this 9 day of April, 2008.


      /s/Thomas W. Thrash
      THOMAS W. THRASH, JR.
      United States District Judge